Thank you and good morning. We have three argued cases, but we also have some cases that are submitted on the briefs at this time. And those are United States v. Hardesty, United States v. SSL, Tate v. The University Medical Center, and No. 18-15945, which is one of the two century surety cases. And with that, we will hear arguments beginning with Megyesi v. Berryhill. I don't know if I pronounced that correctly. Good morning, Your Honors. May it please the Court? Brian Ellickson for the appellant, Tim Megyesi, in this Social Security Disability claim. On this fourth hearing for Social Security Disability benefits, the third administrative law judge to hear Mr. Megyesi's case denied the application for benefits. That administrative law judge gave great weight to the opinions of two non-treating, non-examining physicians, Drs. Tella and Fina, in the record. Those opinions were rendered in 2009 and 2010, which is around the onset date of disability. But what is even more important than the dates of those opinions is what those physicians reviewed in determining that Mr. Megyesi had the capability to sustain full-time work. Dr. Tella, in 2009, reviewed a 2007 MRI with an original onset date of disability in 2009, two years prior to that onset date. And that physician reviewed a consultative examination report conducted just two or three months after the alleged onset date of disability, which was, of course, later changed to 2010. Those two pieces of medical evidence were all that Dr. Tella reviewed in determining that Mr. Megyesi could perform light work. Counsel, let me, if I could go to the one issue that is of concern to me. Of course, Judge. And that is, you also argue that the ALJ did not specifically mention Dr. Cherechek's opinion, and he was a treating physician. Yes, Judge. But I don't understand why that isn't harmless error, because Dr. Cherechek's statement was patient not to exceed U.S. Department of Labor sedentary guidelines. And the ALJ's past work determination lists the Department of Labor exertional level for all three positions as sedentary. So given that the treating physician's statement is completely consistent with what the ALJ did, I'm not sure why these other issues turn out to matter. Can you explain that to me? I can, Judge. Thank you. Dr. Cherechek treated Mr. Megyesi for an industrial injury. The date of injury is alleged to be 2008. He engaged in consistent treatment from 2007 to, I believe, 2009 on that, or rather 2008 to 2010, on that industrial injury. He based his opinion, and in the record, Judge, it's in the record, and as you said, it said not to exceed U.S. Department of Labor guidelines for sedentary. Right. And he listed impairments, the industrial impairments. That's not all the impairments that the judge, the administrative law judge, found to be severe. Well, I still don't understand why not mentioning it makes any difference. Because what he, what the ALJ did was consistent with what the treating physician said were the limitations. Yes, Judge Graber, but when we look at the combination of impairments in this case, which the ALJ found to be degenerative disc disease, which was predicated, which was Dr. Cherechek's purview in treatment, in addition to other impairments including chronic pain syndrome, evaluation of Dr. Cherechek's opinion is important here. And I don't think it's harmless because if we were to limit Mr. Megyesi to sedentary work based simply on the industrial injury, the orthopedic injury, the degenerative disc disease, further evaluation of carpal tunnel syndrome and chronic pain syndrome may lead- Well, but then I don't understand how Dr. Cherechek has anything to do with it. Because basically what you're saying is, well, he didn't know everything. So from what he knew, sure, this sedentary was fine. But then putting him into the mix doesn't seem to advance the argument, it seems to me. You're saying, well, it's other stuff that he didn't know about. So it seems like a disconnect to me, logically. I certainly understand the question. Even if the court were to find that that is harmless error, the crux of the issue here is the evaluation of the physician opinions that the ALJ did in fact evaluate. So on the one hand, we have these non-treating, non-examining physicians who reviewed evidence, objective evidence that predated the onset date of disability by two years or more and reviewed one consultative examination report. On the other hand, we have the opinions of treating physician Dr. Page, a treating pain management physician who applied in 2011 to limitations inconsistent with work. One of the things the commissioner noted in briefing was that they characterized Dr. Page's opinion as sedentary to light. But in the 2013 administrative hearing, the text of that opinion was provided to the commissioner's vocational expert, and the commissioner's vocational expert affirmed that no work would be available with those limitations. To call it sedentary to light, I think, is a bit of a misnomer. And there's also the opinion of Dr. Peachy, an examining physician, who, unlike other examining physicians in the file, had access to the evidence of record. That evidence includes MRI findings, which have spanned the time at issue. Dr. Peachy's opinion is at ER 1132, the examination and the pages that precede it. And so you have the two hands here. On the one hand, non-treating, non-examining physician. On the other hand, these doctors who have a much closer relationship with Mr. Magacy, a relationship that is noted in the commissioner's regulations to be important, to be generally entitled to greater weight. And now the ALJ is weighing, in this case, on these facts. It simply isn't supported by substantial evidence. Counsel, let me go back to Judge Graber's question. I know you want us to send—ideally, you want us to award benefits and be done with the case. All right, sure. Let's say we were to send this case back, which is also what you want us to do in some sense. And let's say this time the ALJ has access to Dr. Cherichak's opinion. Getting back to Judge Graber's question, what difference would that make? So now the ALJ has the opinion before it. The ALJ reads the opinion, the notes of Dr. Cherichak. What would the ALJ do differently this time than it didn't do last time? I think it would inform her evaluation of the impairments. She found Mr. Magacy able to perform light work with some additional limitations. Dr. Cherichak, based simply on the sequelae of the industrial injury, found sedentary, found Mr. Magacy to be more limited based on one impairment than the administrative law judge found him to be impaired on the totality of the impairments. I think that would inform her decision making. I think that was— You said light work, but these are all sedentary positions that are listed at ER 36. The past work is sedentary, Judge, ranging from the range of semi-skilled past work, semi-skilled sedentary past work. And so I understand your point, Judge Graber, on the harmless error, but I think the fact that Dr. Cherichak found this individual to be more limited based on one impairment, the ALJ found to be limited based on the totality. I need to clarify. Yes, that's his past relevant work, but the finding was that claimant is capable of performing his past relevant work. Yes, Judge. Okay. And that work is sedentary, not at the light level. It's at the sedentary level. That is correct, Judge. Okay. So how would it make a difference? I think this is an important question for Judge Graber and for me. Yes. What difference would it make if the ALJ said, look, you can do sedentary work, and that's what Cherichak said, why does it matter that the ALJ did not see what Cherichak said? It matters, I think, for two reasons. One, to try to address your question, Judge Owens, and Judge Graber's question, the simple fact is that Dr. Cherichak treated the industrial injury, and we found Mr. Megacy to be very limited based on simply that injury. I think that when we look at the balance of medical opinion in this case, that's going to inform the judge's decision. If he's sedentary based on simply the orthopedic industrial impairment, he would certainly be additionally limited by other impairments, which the judge found to be severe. I get your argument now. And I apologize for not raising it before, but I would like to save the last minute for rebuttal if I may. All right. You can have a full minute when the time comes. Thank you, Judge. Mr. Talbert. Good morning, Your Honors. May it please the Court, Daniel Talbert for Andrew Saul, the Commissioner of Social Security. Substantial evidence supports the administrative law judge's November 2015 decision, finding the claimant was not disabled because he was able to perform sedentary past relevant work. This case included a large number of different medical source opinions assessing different levels of functional capacity for the claimant, and in a case like that, it's the ALJ's sole responsibility to resolve the conflicts and to make specific findings about the different opinions and determine the claimant's residual functional capacity, or RFC. In this case, substantial evidence supports the ALJ's findings, and this Court should affirm. The panel has already addressed, with my friend on the other side, the issue of Dr. Charochak's opinion. I don't think we need to belabor that point unless there's further questions. But I do have a question about it. I mean, I'm trying to understand how this doctor's opinion did not make it into the ALJ's opinion. Kind of walk me through how that happened. So I can't answer the question of why the ALJ didn't mention it. I can't get into the ALJ's head and answer that question. But it was before the ALJ, correct? It was in the record, yes. It was in the record. Well, it's mentioned in the record, not in the discussion of the doctors, but the treatment notes from 2009 and 2010 from this doctor are mentioned at ER 30. Yes, Your Honor. So it's clear the ALJ read something from that source. Yes, Your Honor. The ALJ had Dr. Charochak's treatment notes and his opinions. So I think as we state in our brief, the ALJ should have said what weight she was giving to Dr. Charochak's opinions, but as I think Judge Graber mentioned earlier and as we note in our brief, the failure to discuss those opinions was harmless error on this record. I cite in the brief Marsh v. Colvin, which is this court's decision from, I think, 2015, that said harmless error principles apply even to ignoring or failing to mention treating source opinions. And here, since Dr. Charochak once said the claimant could do light work and once said the claimant could do sedentary work, either one is fully consistent with the ALJ's bottom line conclusion here, that the claimant could do his sedentary past relevant work. But, you know, opposing counsel made the point that the ALJ was focused on one line of injury, I guess what I would say. Dr. Charochak is talking about a different line of injury. Can you address that? His point is it's not harmless because it's not the same issue in a sense. It's actually a different health issue. Can you speak to that? So I think that's incorrect, frankly. Dr. Charochak was looking at the claimant may have had other impairments that he was alleging at a later point, but Dr. Charochak and the ALJ were still talking to a large extent about the same things. They were talking about the same claimant. They were talking about largely the same condition. And to the extent that, for example, we're talking about the claimant's maybe carpal tunnel syndrome that affects his manipulation, the use of his hands, the ALJ considered that and said, well, he's limited to frequent use of his hands instead of constant use of the hands. Now, Dr. Charochak might not have accounted for that and might have just said the exertional strength-related limitation to sedentary work. But there's nothing that's inconsistent between what Dr. Charochak said and what the ALJ said. And I think if we get into an area where we're saying, well, we don't know because if we had Dr. Charochak's opinion for sedentary from this time and there's other impairments later, maybe the RFC would have been reduced. That's just pure speculation. There's no basis on this record for saying that the claimant would be more limited than that based on what Dr. Charochak had to say. So, again, we have multiple medical source opinions here. We have different treating sources. We have different examining sources. We have different non-examining sources. And the majority of the opinions in this record support that the claimant could do at least the sedentary range of work that the ALJ found he could do. Now, the claimant focused, my friend focused earlier on the fact that Dr. Page and Dr. Peachy, Dr. Page was a treating source, Dr. Peachy was a one-time examining source, had a much closer relationship with the claimant than other doctors did. But I just want to push back on that a little bit and note that about a month after Dr. Peachy examined the claimant, Dr. Levison also examined the claimant. So Dr. Levison had the same level of relationship with the claimant as Dr. Peachy, and he was the one that said there's significant exaggeration, there's some inconsistencies, this is a normal examination other than the exaggerations the claimant is making. Dr. Ahmed, the 2009 examining source, also examined the claimant. And again, when we're talking about treating sources like Dr. Page, Dr. Charochak, we talked about before, treated the claimant from 2009 through 2011, I believe. So much more contact with the claimant than Dr. Page had, and Dr. Charochak's the one that said light or sedentary work. No, he said sedentary, he didn't say light. Respectfully, Your Honor, he said light, I think, in 2009, and then in 2010 he said sedentary. Okay. I was looking at the 2010, the sort of final page. That's right. The most recent one, the 2010 one, was sedentary. Again, consistent with what the ALJ concluded here. But there's also, as I noted in my brief and as the ALJ notes in her decision, there were also some treating sources in 2015, Dr. Little, who was a surgeon, and Dr. Amrani, who declined certified disability for the claimant. So when we have sort of all of these different opinions throughout the record, it's the ALJ's job to synthesize this and to determine what's the most that this claimant can do despite his various impairments and limitations. And on this record, the ALJ's finding that the claimant can do his sedentary, not very exertionally demanding past relevant work as an appointment scheduler and travel sales, I think it was manager, travel sales representative, is amply supported by substantial evidence. If the court doesn't have any further questions, I would just yield the remainder of my time and submit this case and ask the court to affirm the ALJ's decision. Thank you. I don't believe we have any more questions. Thank you. And you have some rebuttal. Thank you, Your Honors. My colleague mentioned Drs. Little and Amrani declining to endorse disability. Respectfully, that's very different from saying that he is not, in fact, disabled. Refusing to give an opinion is simply not an opinion, one way or the other. There are many rational reasons why a doctor might not want to get involved in social security disability litigation. As adverse as doctors are to that, I think it would be unfair to read something into nothing, as my colleague would urge you to do. When we look at Dr. Levison's opinion, Dr. Levison said, in essence, that Mr. Megacy has absolutely no limitations. The judge rejected that opinion, did not give it weight. The earlier examining physician, Dr. Ahmed, claimed that Mr. Megacy had absolutely no limitations. The judge did not give that weight and found limitations. Those opinions are in proverbial left field, and what we're left with is an opinion from two non-treating, non-examining doctors who reviewed nothing relevant versus the treating and examining physicians who did. Thank you, Your Honors. Thank you, Counsel. The case just argued is submitted, and we appreciate the helpful arguments from both of you.
judges: Fernandez, Graber, Owens